```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF OHIO
                         EASTERN DIVISION
```

BOARDS OF TRUSTEES OF THE
OHIO LABORERS' FRINGE
BENEFIT PROGRAMS,

        Plaintiffs,

   vs.                             Civil Action 2:05-CV-54
                                     Magistrate Judge King

TIMOTHY JENKINS *etc., et al.*,

        Defendants.


## OPINION AND ORDER

Plaintiffs bring this action pursuant to §301 of the Labor-Management Relations Act of 1947, 29 U.S.C. §185, and §502 of the Employees Retirement Income Security Act of 1972 [hereinafter "ERISA"], 29 U.S.C. §1132 *et seq.,* seeking recovery for amounts allegedly due certain employee benefit plans. With the consent of the parties, 28 U.S.C. §636(c), this matter is now before the Court on plaintiffs' motion for summary judgment, Doc. No. 32, as supplemented by Doc. No. 55. Plaintiffs' motion for leave to file substituted exhibits in connection with their supplemental motion for summary judgment, Doc. No. 58, is **GRANTED. The Clerk is DIRECTED to SUBSTITUTE the exhibits attached to Doc. No. 58 for those attached to Doc. No. 55.**

**BACKGROUND.**

Plaintiffs consist of the Boards of Trustees of the Ohio Laborers' Fringe Benefit Programs [hereinafter "Benefit Programs"], an association of three employee benefit trust funds and one labor management cooperative trust. *Complaint,* at ¶2. The Benefit Programs maintain their principal place of business in Worthington, Ohio. *Id.*

The defendants named in the complaint are Timothy Jenkins, individually and d/b/a Dan Ray Construction, Inc., a/k/a Dan-Ray Construction; Paul Jenkins, individually and d/b/a as Dan Ray Construction, Inc., a/k/a Dan-Ray Construction; as well as Dan Ray Construction, Inc., d/b/a Dan-Ray Construction.  The complaint alleges that each of the defendants "were employers which maintained their principal office and place of business at Cleveland, Ohio." *Complaint,* ¶3.  Plaintiffs also allege that Dan Ray Construction "is not incorporated in the State of Ohio[] and Defendants Timothy Jenkins and/or Paul Jenkins are responsible for filing contribution reports."  *Id.*  Because of the variations in the names used, Dan Ray Construction will be referred to as "the business," unless the particular name used becomes significant.

On October 10, 2001, "Dan Ray Construction" entered into an agreement with Local No. 860, affiliated with the Ohio Laborers' District Council of Ohio.  *See Agreement,* Exhibit A to *Motion for Summary Judgment,* Doc. No. 32.  By that *Agreement*, the business "accepted the terms of the Ohio Highway-Heavy Municipal and Utility Construction State Agreement ["the CBA"].  The CBA obligated the business to file reports and make contributions to the Benefit Programs on behalf of the employees of the business working within the trade and territorial jurisdiction of a laborer.  *Complaint,* ¶4.  *See also* CBA, at pp. 26-27, attached as Exhibit F to *Plaintiffs' Reply,* Doc. No. 41.  Plaintiffs allege that defendants acted in breach of the CBA by failing to make monthly contributions to the Benefit Programs for the period November 2002 through September 2004. *Complaint,* at p.3.  As a consequence, plaintiffs allege, plaintiffs seek judgment in the principle amount of $70,570.18,

plus interest from the date of judgment at the rate of 1% per month, as well as attorney fees and the costs of the action.

**STANDARD.**

Although summary judgment should be cautiously invoked, it is an integral part of the federal rules, which are designed "to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)(quoting Fed. R. Civ. P. 1). The standard for granting summary judgment is found in Fed. R. Civ. P. 56. Rule 56(c) provides in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Pursuant to Rule 56(c), summary judgment is appropriate if "there is no genuine issue as to any material fact . . . ." In making this determination, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). However, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp*, 477 U.S. at 322. The mere existence of a scintilla of evidence in support of the opposing party's position will be insufficient; there must

be evidence on which the fact finder could reasonably find for the opposing party. *Anderson*, 477 U.S. at 251. Moreover,

> [w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).

**INDIVIDUAL LIABILITY OF DEFENDANTS TIMOTHY AND PAUL JENKINS.**

Plaintiffs have submitted evidence, undisputed by defendants, that the corporate charter of Dan-Ray Construction Company, Inc., was cancelled by the Ohio Secretary of State in December 1992 for failure to pay franchise taxes. Exhibit F, attached to *Motion for Summary Judgment,* Doc. No. 32. Plaintiffs seek judgment against Timothy and Paul Jenkins individually, as well as against "Dan Ray Construction."

The *Agreement*, Exhibit A attached to *Plaintiffs' Motion for Summary Judgment,* Doc. No. 32, was signed "Dan Ray Construction" by Timothy Jenkins. In his affidavit submitted in opposition to the motion for summary judgment, Doc. No. 39, Timothy Jenkins states that he "did not sign the Agreement with the Union in [his] individual capacity. Rather, [he] executed this document in [his] capacity as an agent for Dan Ray." *Affidavit of Timothy Jenkins,* ¶12, attached to *Defendants' Memorandum in Opposition to Motion for Summary Judgment,* Doc. No. 39. Timothy Jenkins' signature on this affidavit is followed by the initials "V.P." *Id.* He testified on deposition that the business is a corporation, *Deposition of Timothy Jenkins,* at p.5. Although he has not been an officer of the corporation for a number of years, he oversees all field operations for the company, *Id.,* at p.6, and it is he who

4

"determines what [his] duties are going to be on any given day." *Id.,* at p.10. His father, defendant Paul Jenkins, is the owner of the business, is its president, *Id.,* at pp. 5-6, and runs its "day-to-day activities." *Id.,* at pp. 13-14. Paul Jenkins also has check writing authority for the company. *Id.,* at pp. 5-6.

However, Karen A. Adams, who completes the union reports for the business, *Deposition of Karen A. Adams,* at p.8,[1] testified that defendant Timothy Jenkins "runs the business, the day-to-day operations. ..." *Id.,* at p.12. Tim Jenkins hires employees, and determines whether any particular employee is covered under the CBA. *Id.,* at p.15. Timothy Jenkins also completes the certified payroll records for the business. *Id.,* at p.24. Karen A. Adams also receives all information necessary for her preparation of reports from defendant Tim Jenkins. *Id.,* at p.11. Once she has completed the contribution reports, she forwards them to defendant Timothy Jenkins, who "would send them on to Columbus." *Id.,* at p. 32. She does not know Paul Jenkins, and has never seen him. *Id.,* at pp.12, 23.

Under ERISA, the "term 'employer' means any person acting directly as an employer, or indirectly in the interest of an employer in relation to an employee benefit plan; it includes a group or association of employers acting for an employer in such capacity." 29 U.S.C. §1002(5). The term "person" as used in §1002(5), "means an individual, partnership, joint venture, corporation, neutral company, joint-stock company, trust, estate, unincorporated organization, association, or employee organization." 29 U.S.C. §1002(9).

Under Ohio law, when the articles of a corporation have been cancelled, "the corporation shall cease to carry on business and shall

---

[1] Karen Adams is actually employed by Utilicon, for whom the business does work as subcontractor. *Deposition of Karen A. Adams,* at p.8.

do only such acts as are required to wind up its affairs, ... and for such purpose it shall continue as a corporation." O.R.C. §1701.88(A). "Under this section of the Corporation Act, the authority granted to a corporation by law is removed by the legislature for all purposes except such as are necessary to wind up its affairs." *Chatman v. Day,* 7 Ohio App.3d 281, 282 (Montgomery Cy. Ct.App. 1982). Thus, where a corporate charter is cancelled "for non-payment of franchise taxes, the corporation does not cease to exist but remains a *de jure* corporation for at least a limited purpose of winding up its corporate affairs. ..." *Columbia Real Estate Title Ins. Co. v. Columbia Title Agency, Inc.,* 11 Ohio App. 3d, 284, Syllabus (Franklin Cy. Ct. App. 1983). *See also Thomas v. Price,* 133 Ohio App. 3d 585, 589 (Hamilton Cy. Ct. App. 1999); *Monteith v. Kline,* 1992 WL 150281 at *2 (Summit Cy. Ct. App., June 24, 1992). Section 1708.88(A) reflects the "intention of the legislature to withdraw the power of such corporation and not to tolerate the use of lapsed corporations by individuals as a shield for continuing business." *Chatman,* 7 Ohio F.3d at 282:

> [U]nder R.C. 1701.88(A) of the general Corporation Act, when the articles of a corporation are cancelled, whether by the Secretary of State or otherwise, the authority of the corporation to do business ceases and after such termination officers who carry on new business do so as individuals, lose the protection of the Corporation Act, and are personally responsible for such obligations as they incur.

*Id. See also Sheehan v. McRedmond,* 1998 WL 774983 at *2 (Cuyahoga Cy. Ct. App., November 5, 1998); *Consolidated Freightway Corp. v. Allred,* 1991 WL 268743 at *1 (Franklin Cy. Ct. App., December 10, 1991).

In light of the uncontroverted evidence that the corporate charter of the business was cancelled by the Secretary of State in December 1992, this Court concludes that, beyond that date, the

do only such acts as are required to wind up its affairs, ... and for such purpose it shall continue as a corporation." O.R.C. §1701.88(A). "Under this section of the Corporation Act, the authority granted to a corporation by law is removed by the legislature for all purposes except such as are necessary to wind up its affairs." *Chatman v. Day,* 7 Ohio App.3d 281, 282 (Montgomery Cy. Ct.App. 1982). Thus, where a corporate charter is cancelled "for non-payment of franchise taxes, the corporation does not cease to exist but remains a *de jure* corporation for at least a limited purpose of winding up its corporate affairs. ..." *Columbia Real Estate Title Ins. Co. v. Columbia Title Agency, Inc.,* 11 Ohio App. 3d, 284, Syllabus (Franklin Cy. Ct. App. 1983). *See also Thomas v. Price,* 133 Ohio App. 3d 585, 589 (Hamilton Cy. Ct. App. 1999); *Monteith v. Kline,* 1992 WL 150281 at *2 (Summit Cy. Ct. App., June 24, 1992). Section 1708.88(A) reflects the "intention of the legislature to withdraw the power of such corporation and not to tolerate the use of lapsed corporations by individuals as a shield for continuing business." *Chatman,* 7 Ohio F.3d at 282:

> [U]nder R.C. 1701.88(A) of the general Corporation Act, when the articles of a corporation are cancelled, whether by the Secretary of State or otherwise, the authority of the corporation to do business ceases and after such termination officers who carry on new business do so as individuals, lose the protection of the Corporation Act, and are personally responsible for such obligations as they incur.

*Id. See also Sheehan v. McRedmond,* 1998 WL 774983 at *2 (Cuyahoga Cy. Ct. App., November 5, 1998); *Consolidated Freightway Corp. v. Allred,* 1991 WL 268743 at *1 (Franklin Cy. Ct. App., December 10, 1991).

In light of the uncontroverted evidence that the corporate charter of the business was cancelled by the Secretary of State in December 1992, this Court concludes that, beyond that date, the

corporation continued to exist only for the purpose of winding up its affairs. *See* O.R.C. §1701.88(A). The *Agreement* was signed by Timothy Jenkins in October 2001. Exhibit A to *Motion for Summary Judgment,* Doc. No. 32. Clearly, entering into a new contract cannot qualify as an act of winding up corporate affairs. Thus, the officers of the corporation "who carry on new business do so as individuals... and are personally responsible for such obligations as they incur." *See Chatman, supra,* 7 Ohio App.3d at 282.

Defendant Timothy Jenkins testified that defendant Paul Jenkins, who has not submitted an affidavit, is the president of the business. *Deposition of Timothy Jenkins at* pp. 5-6. Defendant Timothy Jenkins also acknowledged that he is acting as the vice president of the business. *Affidavit of Timothy Jenkins,* ¶1. The testimony provided by defendant Timothy Jenkins and Karen A. Adams in their depositions makes clear that it is defendant Timothy Jenkins who is responsible for hiring employees of the business and submitting contribution reports and payments.

This Court finds that the evidence in this record is sufficient to establish that defendants Timothy Jenkins and Paul Jenkins each qualify as an "employer" for purposes of ERISA. To the extent that the business is an entity separate from Timothy and Paul Jenkins it, too, qualifies as an "employer" for purposes of ERISA.

**DAMAGES**.

The administrative manager of the Benefit Programs, Matthew A. Archer, states in his affidavit that defendants failed to make timely contributions to the Benefit Programs for the period November 2002 through September 2004. *Affidavit of Matthew A. Archer,* ¶12, attached

as Exhibit to *Supplemental Memorandum Supporting Motion for Summary Judgment,* Doc. No. 34. The audit of the records of the business reveals unpaid contributions now totaling $39,346.49. *Id.,* at ¶13. Taking into account the liquidated damages authorized by the CBA plus the 1% per month on late contributions authorized by the CBA, the total now due the Benefit Programs is $70,570.18, *Id.,* ¶¶13, 17.

Defendants dispute this figure and the audit on which these figures are based: "Numerous incorrect assumptions, however, form the basis of [the] audit. [The auditor] incorrectly concluded that numerous employees who were not members of the Union and did not perform the work of laborers were, in fact, laborers." *Defendants' Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment,* at p.3, Doc. No. 39. Defendants offer a summary judgment by Karen A. Adams, Exhibit A attached to *Defendants' Memorandum contra Plaintiffs' Motion for Summary Judgment,* Doc. No. 39, showing the hours worked by and contributions made on behalf of all employees of the business who are classified as "Laborer."

It is clear that defendants' challenge to the plaintiffs' audit is itself based upon an erroneous predicate, *i.e.,* that, under the CBA, the employer is liable for contributions only with respect to members of the union. However, the CBA clearly refers -- not to union members -- but to "all employees in the classification of work under the laborers' union jurisdiction. ..." CBA, Art. IV, ¶34, attached as Exhibit F to *Plaintiffs' Reply*, Doc. No. 41. Moreover, Article IX of the CBA requires each contractor of the CBA to pay "[f]ringe benefit contributions ... at the rate specified ... for all hours paid to each employee by the contractor under" the CBA. CBA, at p. 26, attached as Exhibit F to Doc. No. 41. Employees are defined in the CBA as "all ...

8

persons employed by the contractor in the performance of any of the various classes of work covered by this [CBA] coming within the jurisdiction of the Union as set forth in Exhibit A, ..."  CBA, at p.8, attached as Exhibit F to Doc. No. 41.  Exhibit A to the CBA, pp. 41-43, attached as Exhibit F to Doc. No. 41, includes within the jurisdiction of the union work defined as "watch person" (who assures that "equipment, job and office trailers" remain secure), "signal men," and "general excavation and grading," (which includes landscaping at all sites).

The business classifies each employee as either "laborer," *i.e.,* member of Local 860, or "policeman," *i.e.,* all employees not members of Local 860.  *Affidavit of Karen Adams,* ¶7; *Affidavit of Timothy Jenkins,* ¶9, attached as Exhibits to *Defendants' Memorandum contra Motion for Summary Judgment,* Doc. No. 39.  The position of "policeman" is a "'catch-all' classification that applies to workers who performed odd jobs as needed varying from traffic control workers, parts runners, street sweepers, security person[nel] or watchmen who watched job sites when work was not taking place and other non-labor related jobs."  *Affidavit of Timothy Jenkins,* ¶4.  Karen A. Adams testified that a "policeman" serves, for example, as a "watch person" when "somebody has to stay [at the site of freshly poured concrete] and watch it so that the kids don't trample through it."  *Deposition of Karen A. Adams*, at p.17.  A "policeman" may also perform such jobs as landscaping, *Id.,* at p.19, and flagging, *Id.,* at p.18. Timothy Jenkins testified that a "policeman" may perform such jobs as security, landscaping, traffic control and security to "watch[] our equipment at night on different projects." *Affidavit of Timothy Jenkins,* at p.37.

There is no doubt that the determinative characteristic of a "policeman" employed by the business is that the employee is not a member

of the union.  *See Affidavit of Timothy Jenkins,* at ¶4 ("When an employee originally classified as a 'policeman' informed Dan-Ray that he had joined Ohio Laborers' Union Local 860 (the 'Union') his classification was changed from policeman to laborer").

To the extent that defendants take the position that their obligations to the Benefit Programs under the CBA extends only to union members, they are, for the reasons stated *supra,* mistaken.  Where, as here, the collective bargaining agreement requires contributions based upon work performed and does not distinguish between plan participants and non-participants, "defendants were obliged to make contributions to funds for covered work performed by [employees] irrespective of their status under the plan."  *Iron Workers' Local No. 25 Pension Fund v. MCS General Contractors, Inc.,* 229 F.3d 1152, 2000 WL 1276830, **5 (6th Cir. 2000)(unpublished).  *See also Local No. 348 v. Kohn Beverage Co.*, 749 F.2d 315, 319 (6th Cir. 1985) (the fact that the CBA does not distinguish union from non-union suggests that the agreement covers all of the employees within the classification).

Moreover, the evidence establishes that some of the work performed by employees classified as "policemen," is in fact work falling within the trade jurisdiction of the union.  The business was therefore obligated by the CBA and the *Agreement* to file reports and make contributions in connection with all such work performed by each employee of the business, whether classified as "laborer" or "policeman."

The summary prepared by Karen A. Adams, attached as Exhibit A to *Affidavit of Karen Adams,* is therefore insufficient to controvert the evidence produced by plaintiffs in support of their claims.  *See* Exhibit K, attached to *Plaintiffs' Supplemental Memorandum in Support of Motion for Summary Judgment*, Doc. No. 55.

10

The amounts sought by plaintiffs are based on consideration of all work performed by all employees of the business. It may be that not all of the work performed by an employee classified as a "policeman" falls within the trade jurisdiction of the union. However, defendants have failed to produce records, and apparently do not maintain records, specifying the actual assigned duties of each employee classified as a "policeman." The business' time records do not reflect the nature of the work performed by each "policeman," "[j]ust the amount of time they spent on the project." *Deposition of Timothy Jenkins,* at p.35.

The consequences of this deficiency in record keeping must fall upon the defendants. ERISA requires that "every employer shall ... maintain records with respect to each of his employees sufficient to determine the benefits due *or which may become due* to such employees." 29 U.S.C. §1059(a)(1)(emphasis added). Section 1059 "require[s] employers to maintain records on employees and to furnish to benefit plans the information needed for the plans' 'fulfillment of their reporting duties.'" *Central State Pension Fund v. Central Transport, Inc.*, 472 U.S. 559, 573 (1985). In this regard, benefit plans are obligated under ERISA "to furnish all participants with various documents informing them of their rights and obligations under the plan ... a task that would certainly include the duty of determining who is in fact a plan participant." *Id.* Defendants will not be heard to argue that their record-keeping obligations extended only to members of the union or to those employees whom plaintiffs have previously established are plan participants.

Where an employer has failed to keep records sufficient to permit determination, with precision the amount of contributions due the benefit funds, "an employer is liable for contributions on all hours

11

worked during the period in which it has been demonstrated that some covered work was performed." *Michigan Laborers' Health Care Fund v. Grimaldi Concrete, Inc.*, 30 F.3d 692, 697 (6th Cir. 1994). *See also Brick Masons Pension Trust v. Industrial Fence and Supply*, 839 F.2d 1333, 1338-39 (9th Cir. 1988).

Defendants contend that the record keeping of the business is sufficient because the statute requires that the employer maintain only those records necessary to establish the number of hours worked by its employees. This contention misses the mark to the extent that defendants' records fail to specify the hours worked by each employee within the trade jurisdiction of the union.

The CBA in this case provides that if "contributions are not received [in timely fashion], the Employer will be subjected to and agree to pay liquidated damages of ten percent [10%] plus one percent (1%) per month for each month the Employer is delinquent." CBA, at Article IX, p.27, attached as Exhibit F to Doc. No. 41. Matthew A. Archer, the Benefit Programs' administrative manager, establishes that the business owes $39,346.49 in unpaid contributions. *Affidavit of Matthew A. Archer,* at ¶13. Archer also confirms that liquidated damages were computed at a rate of 10% as provided by the CBA and that the interest on the delinquent payments was computed at the rate of 1% per month, as authorized by the CBA. *Id.,* at ¶¶15, 16. Defendants have failed to controvert these figures. Accordingly, there does not exist a genuine issue of material fact on this issue.

Plaintiffs also seek attorney's fees and document a total of 85.55 hours by affidavits of their attorney. *Affidavits of Steven L. Ball,* attached to *Plaintiffs' Motion for Summary Judgment,* Doc. No. 32 (documenting 55.55 hours); attached to *Plaintiff's Reply,* Doc. No. 41;

(documenting 9.00 hours associated with the filing of *Plaintiffs' Reply*); attached to *Plaintiffs' Supplemental Motion for Summary Judgment,* Doc. No. 55 (documenting 24 hours since October 5, 2006). Plaintiffs' attorney also indicates that his rates increased from $175.00 per hour to $195.00 per hour during the course of this litigation.

This Court finds that the number of hours documented is reasonable, particularly in light of the protracted nature of the litigation, due entirely to the actions of the defendants. Moreover, the Court concludes that the rates of compensation specified by plaintiffs' attorney are likewise reasonable. The Court therefore **AWARDS** plaintiffs' attorney fees in the total amount of $16,386.25.[2]

**WHEREUPON,** plaintiffs' motion for summary judgment, Doc. No. 32, as supplemented by Doc. No. 55, is **GRANTED.** Plaintiffs are **AWARDED JUDGMENT** against defendants Timothy Jenkins, Paul Jenkins and Dan Ray Construction, Inc., in the total amount of $86,956.43.

The Clerk shall enter **FINAL JUDGMENT** accordingly.

March 30, 2007              *s/Norah McCann King*
                            Norah M<sup>c</sup>Cann King
                            United States Magistrate Judge

---

[2] Plaintiffs sought a total of $14,631.25, but this figure omitted the 9 hours documented in *Plaintiffs' Reply,* Doc. No. 41.